# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**SONIA GHAWANMEH,**

    **Plaintiff,**

    **v.**                            **Civil Action No. 09-631 (JMF)**

**ISLAMIC SAUDI ACADEMY and**
**THE KINGDOM OF SAUDI ARABIA,**

    **Defendants.**

## MEMORANDUM OPINION

This case was referred for all purposes including trial. Currently pending and ready for resolution is <u>Islamic Saudi Academy's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)</u> [#10]. For the reasons stated below, defendants' motion will be granted in part and denied in part.

## INTRODUCTION

Plaintiff, Sonia Ghawanmeh, is a naturalized American citizen originally from Jordan. Amended Complaint ("Am. Compl.") ¶ 15. Defendants are the Islamic Saudi Academy ("ISA"), where plaintiff worked as a teacher from 2000 to 2009, and the Kingdom of Saudi Arabia. Am. Compl. ¶¶ 10, 11, 18, 39. The gravamen of plaintiff's complaint is that she was discriminated against by her employer because she is a woman and a non-Saudi. Am. Compl. ¶ 2. Specifically, plaintiff asserts the following claims: 1) defendants violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*,[1] when they denied various

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

leave requests, 2) defendants violated her rights under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. §§ 2000e *et seq.,* when they discriminated against her based on her

gender and national origin, 3) defendants breached her employment contract when they fired her

without cause, 4) defendants subjected her to either intentional or negligent infliction of

emotional distress when various individuals associated with defendants made disparaging

remarks about her professional competence, and 5) defendants subjected her to slander as a

result of the spread of the disparaging remarks beyond the school community. Am. Compl. ¶¶

49-74.

## ANALYSIS

I.    Subject Matter Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction over plaintiff's claims.

Under Rule 12 of the Federal Rules of Civil Procedure, a party may assert the defense of lack of

subject matter jurisdiction by motion as long as it is done before the filing of any responsive

pleading. Fed. R. Civ. P. 12(b)(1).  Additionally, "[b]ecause subject-matter jurisdiction focuses

on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an

affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."

Grand Lodge of Fraternal Order of Police v. Aschroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

Accord Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) ("The objection that a federal court

lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or

by a court on its own initiative, at any stage in the litigation, even after trial and the entry of

judgment."); Casanova v. Marathon Corp., 256 F.R.D. 11, 12 (D.D.C. 2009) ("Without regard to

the merits of [plaintiff's] argument, the case law clearly supports the proposition that a court may

at any time consider a challenge to its jurisdiction over the subject matter of a case.").

Specifically, defendants argue that the Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.,* and also under the FMLA. Defendant Islamic Saudi Academy's Statement of Points and Authorities in Support of its Motion to Dismiss Amended Complaint ("MTD").  Even though defendants acknowledge that "[t]he FSIA is the *sole* basis for obtaining jurisdiction over a foreign state, state agency, or state instrumentality," see MTD at 23, they fail to appreciate the significance of the explicit limitation in this statement.  Cf. Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993) (FSIA is sole basis of jurisdiction over foreign sovereign); Jin v. Ministry of State Security, 557 F. Supp. 2d 131, 138 (D.D.C. 2008) (same).  In other words, "once a foreign state's immunity has been lifted under [the FSIA] and jurisdiction is proper, [the statute] provides that 'the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances.'" Rimkus v. Islamic Republic of Iran, 575 F. Supp. 2d 181, 195-96 (D.D.C. 2008) (internal citations omitted).  In that way, [the FSIA] acts "as a 'pass-through' to substantive causes of action against private individuals that may exist in federal, state or international law." Id. at 196 (citing Dammarell v. Islamic Republic of Iran, No. 01-CV-2224, 2005 WL 756090, at *8-10 (D.D.C. Mar. 29, 2005)).  Therefore, "[u]nder the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Agrocomplect, AD v. Republic of Iraq, 524 F. Supp. 2d 16, 22 (D.D.C. 2007) (internal citations omitted).  Thus, as mandated by the Supreme Court, "[a]t the threshold of every action in a District Court against a foreign state, . . . the court must satisfy itself that one of the exceptions applies." Verlinden B.V.

v. Cent. Bank of Nigeria, 461 U.S. 480, 493 (1983).  That said, the Court will nevertheless

address defendants' arguments as to jurisdiction under the FMLA in section "B" below.

      A.     The FSIA

           1.     The Commercial Activities Exception

Under Section 1605(a)(2) of the FSIA, foreign states are not immune from the

jurisdiction of the United States courts where "the action is based upon a commercial activity

carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2).  "Commercial

activity," is defined as "either a regular course of commercial conduct or a particular commercial

transaction or act." 28 U.S.C. § 1603(d).  In Republic of Argentina v. Weltover, Inc., 504 U.S.

607 (1992), the Supreme Court concluded "that when a foreign government acts, not as a

regulator of a market, but in the manner of a private player within it, the foreign sovereign's

actions are 'commercial' within the meaning of the FSIA." Id. at 614.  The Supreme Court

therefore described the pertinent question as "not whether the foreign government is acting with

a profit motive or instead with the aim of fulfilling uniquely sovereign objections" but rather

"whether the particular actions that the foreign state performs . . . are the type of actions by

which a private party engages in 'trade and traffic or commerce.'" Id. at 614 (internal citations

omitted).  In other words, "a foreign state engages in commercial activity . . . where it acts 'in the

manner of a private player within' the market." Saudi Arabia v. Nelson, 507 U.S. at 360;

Restatement (Third) of the Foreign Relations Law of the United States § 451 (1987) ("Under

international law, a state or state instrumentality is immune from the jurisdiction of the courts of

another state, except with respect to claims arising out of activities of the kind that may be

carried on by private parties.").

According to plaintiff, defendants waived their sovereign immunity to suit under the FSIA by virtue of their engaging in commercial activity: "In the instant case, Defendant ISA, as a full-time school, engaged in a 'commercial activity' as an arm, branch, and/or commercial instrumentality of Defendant KSA.'" Am. Compl. ¶ 13.  Defendants, while not contesting that the ISA is an instrumentality of the KSA, argue instead that "[p]laintiff fails to make a showing and relies instead on mere conclusory assertions that the Academy engages in commercial activity." MTD at 23.  Because defendants, who bear the burden of establishing that none of the FSIA exceptions to sovereign immunity apply, challenge only the legal sufficiency of plaintiff's jurisdictional claims, the Court will take plaintiff's factual allegations as true when considering whether jurisdiction exists. Heroth v. Kingdom of Saudi Arabia, 565 F. Supp. 2d 59, 63-64 (D.D.C. 2008).

The issue therefore is whether the KSA's operation of the ISA constitutes commercial activity under the FSIA.  Because the administration of a school is an activity that is routinely performed by private parties, it is therefore precisely the type of action by which a private party may choose to engage in "trade and traffic or commerce."  In other words, if the act of running a school was exclusively reserved for the sovereign, it would clearly not be commercial in nature as defined in the FSIA.  Cf. Weltover, 504 U.S. at 616 (issuance of public debt instruments deemed commercial activity under the FSIA where "[t]hey may be held by private parties; they are negotiable and may be traded on the international market . . . and they promise a future stream of cash income."); Agudas Chasidei Chabad of United States v. Russian Fed'n, 528 F.3d 934, 948 (D.C. Cir. 2008) (entering into contracts for the purpose of publishing and selling reproductions of historical documents and other materials in the United States deemed

commercial activity under the FSIA); Altmann v. Republic of Austria, 317 F.3d 954, 968-69 (9th

Cir. 2002) (marketing of an art exhibition and publication of related materials in the United

States deemed commercial activity under the FSIA), aff'd on other grounds, 541 U.S. 677

(2004); Sabbith v. KH N.S. Al Saleh, 605 F. Supp. 2d 122, 128-29 (D.D.C. 2009) ("hiring

domestic employees is an activity incidental to the daily life of a diplomat and his or her family,

and does not constitute commercial activity [under the FSIA] outside a diplomat's official

function").

2.   <u>Implicit Waiver</u>

Although not identified by plaintiff as a source of the court's jurisdiction, the court notes

that another exception to defendants' sovereign immunity applies in this case, that of implicit

waiver.  Because a foreign state must have intended to waive its sovereign immunity, the FSIA's

implicit waiver exception is narrowly construed. Creighton Ltd. v. Gov't of the State of Qatar,

181 F.3d 118, 122 (D.C. Cir. 1999).  As noted in the House of Representatives Report which

accompanied the FSIA, "[w]ith respect to implicit waivers, the courts have found such waivers

in cases where a foreign state has agreed to arbitration in another country or where a foreign

state has agreed that the law of a particular country should govern a contract." H.R. REP. NO. 94-

1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6617.  Clearly, there can be no more obvious

and implicit waiver of sovereign immunity than the sovereign's express intent to subject itself to

the jurisdiction of a foreign court as demonstrated by a choice of law clause within a contract.

In the case at bar, plaintiff attached to her complaint a copy of her contract with the ISA.

In that document, there is a choice of law clause which states the following: "All disputes under

this Agreement and in the interpretation or validity of any provision, shall be governed by the

6

laws of the Commonwealth of Virginia." Am. Compl., Ex. 1 at 2.  Because the court may

consider undisputed facts outside the complaint when considering the defendants' motion to

dismiss, Sheppard v. United States, — F. Supp. 2d — , 2009 WL 2345112, at *2 (D.D.C. July

30, 2009) ("For a motion brought under Rule 12(b)(1), the Court may consider a complaint

'supplemented by undisputed facts evidenced in the record or the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts.'") (internal citations omitted), the

Court concludes that the ISA did indeed intend to waive its sovereign immunity and subject

itself to the jurisdiction of this Court.  Therefore, in addition to engaging in commercial activity,

the ISA implicitly waived any claim it may have had to sovereign immunity by virtue of the

language in plaintiff's employment contract.  See Joseph v. Office of the Consulate Gen. of

Nigeria, 830 F.2d 1018, 1022 (9th Cir. 1987) ("[I]t is clear that a sovereign party has waived

immunity where a contract *specifically* states that the laws of a jurisdiction within the United

States are to govern the transaction.") (emphasis in original); Frolova v. Union of Soviet

Socialist Republics, 761 F.2d 370, 377 (7th Cir. 1985) (Implied waivers of sovereign immunity

under FSIA found where "a foreign state has agreed that a contract is governed by the law of a

particular country."); Marlowe v. Argentine Naval Comm'n, 604 F. Supp. 703, 709 (D.D.C.

1985) ("[I]f the parties to a contract agree that the laws of one country will govern contractual

interpretations, they have implicitly waived the defense of sovereign immunity.").  See also

Capital Ventures Int'l v. Republic of Argentina, 552 F.3d 289, 293-94 (2nd Cir. 2009) (holding

that Argentine bonds, issued under German law, contained an explicit waiver of sovereign

immunity under the FSIA by virtue of language included in the bonds' offering circular that

waived Argentina's immunity to suit in "*any court*") (emphasis in original); Walker Int'l

7

Holdings Ltd. v. Republic of Congo, 395 F.3d 229, 234 (5th Cir. 2004) (holding that the Republic of Congo explicitly waived its sovereign immunity to suit in the United States under the FSIA by virtue of its signing a contract specifically waiving its immunity and agreeing to abide by the rules of the International Chamber of Commerce, which precludes the assertion of a sovereign immunity defense).

Finally, the Court notes that although defendants assert their complete immunity to suit under the FSIA, they also simultaneously argue that Virginia law governs both plaintiff's tort and contract claims. MTD at 9.  First, defendants state the following in their motion to dismiss: "The Contract has an express provision, paragraph F, that Virginia law governs . . . Virginia law likewise governs Plaintiff's tort claims under the District of Columbia's conflicts of law jurisprudence." Id.  As noted above, defendants later claim that "[t]he FSIA is the sole basis for obtaining jurisdiction over a foreign state, state agency, or state instrumentality" and that the plaintiff has failed to "show that the suit arises from activity that falls within one of the enumerated exceptions to sovereign immunity." Id. at 23.  In any event, it is clear to this Court that not only did defendants waive their sovereign immunity under the FSIA by virtue of their engaging in commercial activity, but they also implicitly waived their immunity to suit by their including a choice of law provision in plaintiff's employment contract.

B.      The FMLA

Under the FMLA, in order to be eligible for leave, the employee must have worked a total of 1,250 hours in the twelve months immediately preceding the requested leave. 29 U.S.C. § 2612(2)(A).  Pursuant to Department of Labor regulations implementing the FMLA, "[a]n employer must be able to clearly demonstrate . . . that full-time teachers . . . of an elementary or

secondary school system . . . did not work 1,250 hours during the previous 12 months in order to claim that teachers are not eligible for FMLA leave." 29 C.F.R. § 825.110(c)(3).  According to defendants, in addition to lacking subject-matter jurisdiction under the FSIA, this Court also lacks subject-matter jurisdiction over plaintiff's interference and retaliation claims under the FMLA because plaintiff lacks standing to bring such claims. MTD at 9.

Specifically, defendants claim that plaintiff was not eligible for the leave she sought under the FMLA. Id. at 10.  In support of their argument, defendants cite to plaintiff's personnel records, which defendants attached as exhibits to its first motion to dismiss, filed June 18, 2009. See Islamic Saudi Academy's Rule 12(b)(1) Motion to Dismiss [#3] at Exs. 1-18.  Defendants also summarized plaintiff's personnel records through the affidavit of Nadia Yousef, Personnel Manager at ISA.  See id. at Declaration in Support of Rule 12(b)(1) Motion to Dismiss. According to Yousef, for the twelve-month period prior to plaintiff's two requests for leave, plaintiff only worked 1,107.7 hours.  According to defendants, because plaintiff did not work a total of 1,250 hours, she was ineligible for leave under the FMLA. MTD at 9-13.  Defendants' challenge to the factual basis for plaintiff's claim for jurisdiction under the FMLA, namely that plaintiff did not work 1,250 hours in the year prior to her leave requests, assumes however that the statute's hourly requirement is jurisdictional.  Ample authority suggests that it is not.

In Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), the Supreme Court addressed the "subject-matter jurisdiction/ingredient-of-claim-for relief dichotomy" with respect to claims brought under Title VII of the Civil Rights Act. Id. at 511.  In that case, the issue before the Court was whether the requirement under Title VII that the employer have at least fifteen employees was jurisdictional in nature, thereby precluding plaintiff from prevailing on a Rule

12(b)(1) motion to dismiss, or whether the determination of that particular fact related instead to the merits of the plaintiff's claim. Id. at 513-14.  Ultimately, the Supreme Court concluded that the fifteen employee numerosity requirement was not jurisdictional in nature. Id. at 515. Specifically, the Court noted that 1) whereas subject-matter jurisdiction cannot be waived, there was no language in Title VII that suggested that courts have an independent obligation to satisfy themselves that the employer at issue has at least fifteen employees, 2) although courts may, upon consideration of a 12(b)(1) motion, review and resolve the disputed facts before it, where the fact at issue is an essential element of the claim, it is more properly considered by the finder of fact, and 3) if a court concludes that it lacks subject-matter jurisdiction, the entire complaint must be dismissed whereas if the court grants a motion to dismiss for failure to state a claim, it may, if it deems it appropriate, retain jurisdiction over pendent state law claims. Id. at 514.  The Supreme Court noted further that the key to its analysis was a reading of the Congressional intent behind the enactment of Title VII. Id. at 514-15.  The Court placed significant emphasis on the fact that neither 28 U.S.C. § 1131, the statutory grant of federal question jurisdiction, nor the jurisdictional provision within Title VII provided any "threshold" limitation on a federal court's jurisdiction over such claims, such as the decidedly jurisdictional requirement that all diversity claims brought under 28 U.S.C. § 1132 have a minimum value of $75,000. Id. at 513, 515. Ultimately, the Court devised a "readily administrable bright line" test such that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character." Id. at 516.

Although there is no authority in this circuit that is directly on point, those circuits that have ruled on whether or not an employee's eligibility status under the FMLA is jurisdictional,

the Fifth, Sixth, and Tenth, have concluded that it is not.  For example, in <u>Minard v. ITC</u>

<u>Deltacom Commc'ns, Inc.</u>, 447 F.3d 352 (5th Cir. 2006), the Fifth Circuit stated the following:

> In light of the Supreme Court's decision in <u>Arbaugh</u>, we conclude
> that the definition section of the FMLA, which defines 13 terms
> used in the statute, including the term "eligible employee," is a
> substantive ingredient of a plaintiff's claim for relief, not a
> jurisdictional limitation.  Accordingly, § 2611(2)(B)(ii)–which
> excludes from the term "eligible employee" "any employee of an
> employer who is employed at a worksite at which such employer
> employs less than 50 employees if the total number of employees
> employed by that employer within 75 miles of that worksite is less
> than 50"–does not circumscribe federal-court subject-matter
> jurisdiction.  This 50-employee threshold appears in the definitions
> section, separate from the jurisdictional section, and does not
> speak in jurisdictional terms or refer in any way to the jurisdiction
> of the district courts.

<u>Id.</u> at 356.  The Sixth and Tenth Circuits came to the same conclusion.  <u>See</u> <u>Cobb v. Contract</u>

<u>Transp., Inc.</u>, 452 F.3d 543 (6th Cir. 2006) ("Inasmuch as the FMLA's definitions of 'employer'

and 'eligible employee' also appear in the FMLA's 'definition' section and do 'not speak in

jurisdictional terms or refer in any way to the jurisdiction of the district courts,' <u>Arbaugh</u>

compels the conclusion that they are not jurisdictional in nature."); <u>Hackworth v. Progressive</u>

<u>Cas. Ins. Co.</u>, 468 F.3d 722, 726 n.4 (10th Cir. 2006) (applying <u>Arbaugh</u> and holding that a

plaintiff's failure to qualify as an "eligible employee" under the FMLA does not strip the court

of its subject matter jurisdiction over plaintiff's claim).[2]

---

[2] On the other hand, district courts that have considered the issue have split.  <u>Compare</u>
<u>Sadowski v. United States Postal Serv.</u>, No. 08-CV-2940, 2009 WL 2496282, at *2 (D. Md.
Aug. 17, 2009) (applying <u>Arbaugh</u> and holding that whether public employees may be held
individually liable under the FMLA went to the "substantive sufficiency of the Plaintiff's
Complaint" and was therefore not jurisdictional) <u>and</u> <u>Myers v. Tursso Co., Inc.</u>, 496 F. Supp. 2d
986, 996 (N.D. Iowa 2007) (holding that the FMLA's employee numerosity requirement is not
jurisdictional) <u>with</u> <u>Sledge v. DaimlerChrysler Corp.</u>, No. 06-CV-14961, 2008 WL 2832180, at
*2 (E.D. Mich. July 21, 2008) (holding that because plaintiff failed to rebut defendant's evidence

Pursuant to the Supreme Court's rationale in <u>Arbaugh</u> and following the lead of the Fifth, Sixth, and Tenth Circuits, this Court concludes that because the FMLA's requirement that an "eligible employee" is one who has worked for a minimum of 1,250 hours in the year preceding her leave request is also found within the definition section of the FMLA, and because there is no suggestion in the language of the FMLA that this hourly requirement was intended to be jurisdictional in nature, the Court will not consider it as such.  Adopting this approach makes sense not only in light of the Court's obligation to defer to Congress when it comes to either granting or restricting federal court jurisdiction over claims, but also in light of this Court's treatment of challenges to employer/employee status under other federal employment statutes, challenges which have also been treated as merit-related rather than jurisdictional.  <u>See</u> <u>Fernandez v. Centerplate/NBSE Inc.</u>, 441 F.3d 1006, 1009 (D.C. Cir. 2006) (applying <u>Arbaugh</u> and holding that whether plaintiff was paid overtime for hours worked in excess of 40 per week was not a jurisdictional limitation under the Fair Labor Standards Act); <u>Harris v. Attorney Gen.</u> <u>of the United States</u>, — F. Supp. 2d. —, 2009 WL 3069677, at *5 (D.D.C. 2009) (holding that Title VII's "employee" requirement was non-jurisdictional).

Finally, and although not limited to this circuit, challenges to a district court's jurisdiction under non-employment statutes have also been deemed non-jurisdictional.  <u>See</u> <u>Thomas v. Miller</u>, 489 F.3d 293, 295 (6th Cir. 2007) (applying <u>Arbaugh</u> and holding that Consolidated Omnibus Reconciliation Act's numerical application threshold was an element of a

---

that he was not an "eligible employee" under the FMLA, the court lacked jurisdiction over plaintiff's FMLA claim) <u>and</u> <u>Laney v. Independence Blue Cross</u>, No. 04-CV-1822, 2006 WL 724559, at *4 (E.D. Pa.  Mar. 15, 2006) (holding that because plaintiff failed to dispute defendant's evidence that she had not worked the requisite 1,250 in order to be eligible for leave under the FMLA, the court lacked subject matter jurisdiction over her claim).

claim rather than a jurisdictional bar); Partington v. Am. Int'l Specialty Lines Ins. Co., 443 F.3d

334, 339 (4th Cir. 2006) (applying Arbaugh and holding that the requirement in the Securities

Act of 1933 that plaintiff qualify as "a person purchasing such security" was not jurisdictional);

Mead v. City First Bank of DC, N.A., 616 F. Supp. 2d 78, 80 (D.D.C. 2009) (applying Arbaugh

and holding that the jurisdictional provision of the Right to Financial Privacy Act was general in

nature and because it made no mention of a party's obligation to assert an allegation of

disclosure to a government authority, whether or not a party made such an allegation went to the

merits of the party's claim and not to the court's jurisdiction over such a claim.).

II.    The Sufficiency of Plaintiff's Statement of Claims

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, "[e]very defense to a claim

for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R.

Civ. P. 12(b).  Certain defenses however, may be made by motion, including that for "failure to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Defendants claim that

plaintiff's remaining claims should be dismissed pursuant to Rule 12(b)(6). MTD at 13-23.  The

issue therefore is the sufficiency of the statement of claims in plaintiff's complaint.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2).  Although detailed factual allegations are not required, "a formulaic recitation of the

elements of a cause of action" are insufficient to survive a motion to dismiss. Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  Rather, "[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at

570)).  A claim satisfies the plausibility standard when it allows for an inference that the

defendant is liable. Id. (citing Twombly, 550 U.S. at 556).

In evaluating a plaintiff's claims, the court accepts as true all factual allegations within

the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006); In re United Mine Workers

of Am. Employee Benefit Plan Litig., 854 F.Supp. 914, 915 (D.D.C. 1994).  In addition, all

reasonable inferences are drawn in favor of the plaintiff. Schuler v. United States, 617 F.2d 605,

608 (D.C. Cir. 1979).  "But where the well-pleaded facts do not permit the court [based on its

judicial experience and common sense] to infer more than the mere possibility of misconduct,

the complaint has alleged-but it has not [shown] that the pleader is entitled to relief." Iqbal, 129

S. Ct. at 1950 (internal quotations omitted).

A.     Plaintiff's FMLA Claims

In her complaint, plaintiff alleges that defendants denied her rights under the FMLA and

that they discriminated against her for attempting to exercise those rights.[3] Am. Compl. ¶¶ 49-50.

In order to state a claim under either theory, however, plaintiff must first show that she qualifies

as an "eligible employee" under the FMLA.[4]  That means that in order to survive defendants'

---

[3] "Federal courts recognize two distinct theories of recovery that arise under the FMLA statute; entitlement (also called interference) pursuant to 29 U.S.C. § 2615(a)(1), and retaliation (also called discrimination) pursuant to 29 U.S.C. § 2615(a)(2)." Cox v. True North Energy, LLC, 524 F. Supp. 2d 927, 934 (N.D. Ohio 2007).  Accord Haile-Iyanu v. Cent. Parking Sys. of Virginia, No. 06-CV-2171, 2007 WL 1954325, at *6 (D.D.C. July 5, 2007).  See also Green v. Intersolutions, Inc., No. 07-CV-298, 2007 WL 1656280, at *2 (D.D.C. July 6, 2007) ("Although the FMLA and DCFMLA do not explicitly state that the statutes protect employees from retaliatory firings, this protection is implied and has been applied by courts in many jurisdictions, including the United States Court of Appeals for the D.C. Circuit and the D.C. Court of Appeals.").

[4] "An employee must qualify as an 'eligible employee' under the FMLA before he or she can enforce the rights provided by the statute." Id.

motion to dismiss, plaintiff's complaint must contain sufficient factual matter to allow for an inference that she "has been employed (i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).[5]

Plaintiff fails to makes any mention whatsoever of her status as an "eligible employee" under the FMLA.  Defendants' motion to dismiss this count will therefore be granted.  <u>See Mishak v. Akron Public Sch.</u>, No. 5:09-CV-351, 2009 WL 2351730, at *2 (N.D. Ohio July 28, 2009) ("Though [plaintiff] stated that he 'was eligible to receive FMLA leave' . . . he never offers any facts indicating why he was eligible.  [Plaintiff's] unsupported legal conclusion of eligibility for FMLA leave does not state a claim for relief."); <u>Adams v. High Purity Sys., Inc.</u>, No. 09-CV-354, 2009 WL 2391939, at *8 (E.D. Va. July 2, 2009) (granting defendant's motion to dismiss because plaintiff failed to allege, *inter alia*, that he was an "eligible employee under the FMLA").

While in her opposition to the defendant's motion to dismiss, plaintiff argues that she must be qualified because of the hours she spent "working outside of the school hours planning, designing homework and classwork sheets, grading, researching and updating her teacher website," plains. opp. at 4, her counsel's suppositions in an opposition to a motion to dismiss are no substitute for the specific factual allegations plaintiff must make in her complaint.  It is those

---

[5] Defendants contend that plaintiff failed to establish a *prima facie* case of either interference or retaliation. MTD at 10-11.  The issue in a 12(b)(6) motion to dismiss, however, is not whether plaintiff has *proven* that she is an "eligible employee" under the statute but merely whether she has *alleged* sufficient facts upon which the court may infer that she is.  Both parties' arguments about whether plaintiff worked the requisite 1,250 hours in the twelve months preceding her leave requests are irrelevant to the Court's analysis.

allegations that will shape the scope of discovery.  Given the detailed factual showing, based on

contemporaneous recordings that the defendant has made as to the hours plaintiff worked,

plaintiff is surely obliged to set forth the reasons why she is eligible for the relief she claims.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," do not suffice. Iqbal, 129 S. Ct at 1949.

>B.     Plaintiff's Title VII Claim

According to defendants, plaintiff's claim that she was discriminated against in violation

of Title VII by virtue of her national origin should be dismissed because plaintiff failed to plead

the claim with sufficient particularity. MTD at 13-16.  Specifically, defendants contend that

although "plaintiff asks the court to draw an inference of discrimination based on disparate

treatment of similarly situated individuals," plaintiff fails to provide any evidence that these

other employees were in fact similarly situated. Id. at 15-16.  With respect to plaintiff's gender-

based Title VII claim, they argue that it, too, must be dismissed because plaintiff failed to

exhaust her administrative remedies as to that claim. Id. at 16-17.

Title VII of the Civil Rights Act of 1964, as amended, provides that "[i]t shall be

unlawful employment practice for an employer . . . to . . . discriminate against any individual

with respect to [her] compensation, terms, conditions, or privileges of employment [ ] because of

such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e) *et seq.*  In

order to state a claim under Title VII, a plaintiff must aver that "(1) she is a member of a

protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action

gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir.

2002) (internal quotation omitted).

In her complaint, plaintiff claims that the ISA discriminated against her in violation of Title VII on the basis of her gender (female) and her national origin (Jordanian). Am. Compl. ¶ 54. She argues that she was unfairly denied leave and ultimately dismissed because there was a "systemic prejudicial and biased culture favoring males and Saudi Arabian nationals at Defendant ISA, which policies, either express or implied, are known or constructively known to Defendant KSA and nonetheless allowed to persist." Am. Compl. ¶ 2. She also makes the following allegations:

> Due to Defendant's workplace culture of preferential treatment, other employees were granted unpaid leaves of absence for vacations and other reasons, before and during this period.

Am. Compl. ¶ 33.

> Other similarly situated teachers who also happen to be Saudi Arabian nationals were not so dismissed, and were not otherwise unfairly treated.

Am. Compl. ¶ 41.

> Defendant ISA allows and perhaps encourages a culture of Saudi ethnocentrism at the school, with knowledge (actual or constructive) of Defendants KSA, evinced by the disparate way non-Saudi teachers, especially women, are treated.

Am. Compl. ¶ 46.

> Had Plaintiff been male and/or a Saudi Arabian national, she would not have been fired.

Am. Compl. ¶ 47.

The problem is that plaintiff does not identify the other similarly situated teachers. The question, therefore, is whether her failure to do so merits dismissal. After Twombly but before Iqbal, the court of appeals for this circuit confronted the argument that Twombly required a

plaintiff to specify those facts which entitled him to relief.  See Aktieselskabet AF 21 v. Fame

Jeans, Inc., 525 F.3d 8 (D.C. Cir. 2008).  The court rejected the proposition that a complaint

needed detailed factual allegations to survive and rejected the argument that Twombly should  be

read to abrogate the requirement of Rule 8 of the Federal Rules of Civil Procedure that the

complaint need only contain a "short and plain statement of the claim showing that the pleader is

entitled to relief." Id. at 16.  It pointed to a decision by the Supreme Court issued after Twombly,

that indicated that "specific facts were not necessary" if the complaint gave fair notice of the

claim. Id. (quoting Erickson v. Pardus, 551 U.S. 89 (2007)) (per curiam).

        Judged by that standard and construed liberally in plaintiff's favor, the allegations give

notice to defendant that plaintiff is asserting that she was treated differently from Saudis and

men who applied for the leave she was refused, and who were not fired as a result of seeking that

leave, as she was.  Thus, even though she does not name the persons who are similarly situated

to herself, but who were treated differently, plaintiff's complaint survives defendant's motion to

dismiss.

        Plaintiff's claim of gender discrimination cannot, however, survive defendant's motion to

dismiss because plaintiff failed to exhaust her administrative remedies as to that claim.  In order

to file suit under Title VII, an employee must first file an administrative claim with the Equal

Employment Opportunity Commission ("EEOC").  See 42 U.S.C. §§ 2000(e)-5(e)(1) and (f)(1)

(describing administrative procedures that precede the filing of a Title VII claim in district

court).  As this Court noted in a case previously before it, "[i]n actions brought under Title VII, a

court has authority *only* over those claims that are (1) contained in the plaintiff's administrative

complaint or claims 'like or reasonably related to' those claims in the administrative complaint

18

and (2) claims for which the plaintiff exhausted administrative remedies." <u>Gipson v. Wells Fargo N.A.</u>, 460 F. Supp. 2d 15, 27 (D.D.C. 2006) (internal quotations omitted) (emphasis added). This Court further noted that the "principal function of the EEOC filing requirement is to 'enable the EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation.'" <u>Id.</u> (internal quotations omitted).  Of course, the notice requirement cannot be satisfied where the complaint omits a cause of action.

As noted by defendants, plaintiff's EEOC Notice of Charge of Discrimination, dated April 1, 2009, indicates that plaintiff is making a claim of retaliation based on national origin. <u>See</u> MTD at Ex. 1.  There is no indication on the form that she is alleging that she was also discriminated against on the basis of her gender.  As a result of plaintiff's failure to assert gender-based discrimination on her EEOC form, that claim must be dismissed.  <u>See</u> <u>Park v. Howard Univ.</u>, 71 F.3d 904, 907 (D.C. Cir. 1995) ("Although it is true that the administrative charge requirement should not be construed to place a heavy technical burden on 'individuals untrained in negotiating procedural labyrinths' . . . it is also true that the requirement of some specificity in a charge is not a mere technicality.") (internal citations and quotations omitted); <u>Bailey v. Verizon Commc'ns, Inc.</u>, 544 F. Supp. 2d 33, 37-38 (D.D.C. 2008) ("If a plaintiff's EEOC charge makes a class of allegation altogether different from that which she later alleges when seeking relief in federal district court, she will have failed to exhaust administrative remedies."); <u>Hunt v. D.C. Dep't of Corr.</u>, 41 F. Supp. 2d 31, 36 (D.D.C. 1999) (holding that plaintiff failed to exhaust her administrative remedies for her claim of gender discrimination under Title VII by failing to check the box for gender discrimination on the EEOC claim form).

     C.     <u>Plaintiff's Breach of Contract Claim</u>

Defendants argues that plaintiff's breach of contract claim must also be dismissed because the claims asserted by plaintiff in her complaint are not supported by the accompanying documentation. MTD at 18-19.  Specifically, defendants argue that, contrary to plaintiff's contention that the contract provides that she may only be terminated *for* cause, the contract actually states that plaintiff may be terminated either with or *without* cause. Id. at 18.  Therefore, according to defendants, plaintiff failed to state a claim for breach of contract. Id. at 19.

 In her opposition, plaintiff argues that "[d]efendants would be correct [in their motion to dismiss] if Plaintiff was not alleging that the termination was pretextual, and in retaliation for exercising her rights under the FMLA." Plaintiff's Opposition to Defendant's Motion to Dismiss at 9.  Plaintiff then argues that "[e]ven if the contract contains an at-will termination clause, no contract, as a matter of law, can contain a provision that allows for termination in retaliation for exercising a federal right or for being a member of a protected class under Title VII." Id.

Review of the plaintiff's contract, however, shows that not only does it specify the duration of employment ("for the period beginning on 09/01/200[8] and concluding on 08/31/2009") but it also states that plaintiff may be terminated *for* cause ("ISA may terminate, suspend, or place on probation the Employee immediately for cause in the event that . . . ) or without cause ("ISA retains the right to terminate the service of any Employee without cause."). Am. Compl. at Ex. 1.

Thus, defendants can proceed upon the theory that they had cause for firing plaintiff or that cause was irrelevant since they retained the right to fire her whenever they saw fit.  Under the latter theory, she would be an at-will employee.  But, if the defendants proceed upon the theory that plaintiff is an at-will employee, then she could, under Virginia law, nevertheless

argue that her firing was motivated by retaliatory animus for having pursued her rights under the FMLA and Title VII and that her discharge was in violation of public policy.  See Bowman v. State Bank of Keysville, 331 S.E. 2d 797, 801 (Va. 1985) (holding that former at-will bank employees, who were also stockholders, had a right to sue for violation of public policy when they were discharged because a Virginia statute conferred on each stockholder the right to vote his shares "free of duress and intimidation.").  Of course, such a claim would be based on the public policy exception to the at-will employment doctrine and would therefore sound in tort rather than contract. Id.

If, on the other hand, defendants proceed upon the theory that the contract was for a specific term, plaintiff might have a claim for breach of contract upon the theory that the contract carried with it an implied covenant of good faith and fair dealing.  To date, the issue has yet to be definitively resolved by the Virginia courts.  See Wright v. St. Charles Water Auth., No. 102-CV-32, 2002 WL 31989105 (Va. Cir. Ct. 2002) (stating that "Virginia does not recognize an independent claim for breach of an implied covenant of good faith and fair dealing in an at-will employment contract" but making no statement as to the viability of a claim made on a fixed term employment contract); Spiller v. James River Corp., No. 2216-CV-3, 1993 WL 946387, at *6 (Va. Cir. Ct. Dec. 23, 1993) (noting that "Virginia does not recognize a claim for breach of a covenant of good faith and fair dealing" because "[i]t is not consistent with the termination at-will presumption and contradicts the mutuality concept.") (internal quotations omitted); Keiler v. Valley Proteins, 1989 WL 646549, at *2 (Va. Cir. Ct. June 15, 1989) (holding by implication that a cause of action may be had for breach of an implied covenant of good faith and fair dealing as to a fixed term employment contract).  See also Schryer v. VBR, No. 101692, 1991

WL 835295, at *3 (Va. Cir. Ct. Nov. 13, 1991) (noting, in dicta, that an implied covenant of

good faith and fair dealing, if applicable to employment contracts, would apply only to fixed

term contracts).  For present purposes, it suffices to say that plaintiff's claim based on contract

are not presently eligible for dismissal because her claims based on her contractual relationship

with defendants state a claim upon which relief can be granted, whether they sound in tort or are

based on an implied covenant of good faith and fair dealing contained within a contract.

      D.     Plaintiff's Tort Claims

      As noted above, the FSIA acts only as a pass-through to substantive causes of action

under federal, state, or international law.  In this case, because the parties agreed that the law of

the state of Virginia would apply to any disputes arising from the contract, the Court looks to the

law of Virginia to determine not only plaintiff's breach of contract claims but also whether

plaintiff has adequately stated her tort claims.

      Under Virginia law, as a means of seeking dismissal, a defendant will demur to a

plaintiff's claim in order test the complaint's legal sufficiency. Ogunde v. Prison Health Servs.,

Inc., 645 S.E. 2d 520, 526 (Va. 2007).  As with a motion to dismiss, the court views the

pleadings in the light most favorable to the plaintiff in order to satisfy itself that the plaintiff has

alleged sufficient facts in support of his claims. Id. (citing Sanchez v. Medicorp Health Sys., 618

S.E. 2d 331, 333 (Va. 2005)).

      1.     Intentional Infliction of Emotional Distress ("IIED")

      In support of a claim for IIED, a plaintiff must allege the following: "1) the wrongdoer's

conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a

causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4)

the resulting emotional distress was severe." Ogunde v. Prison Health Servs., Inc., 645 S.E. 2d at

526.  Accord Supervalu, Inc. v. Johnson, 666 S.E. 2d 335, 343 (Va. 2008); Womack v. Eldridge,

210 S.E. 2d 145, 148 (Va. 1974).

In her complaint, plaintiff claims that ISA employees 1) made disparaging remarks about

her competence as a teacher, creating the impression among her co-workers that she was fired

for incompetence, 2) orally threatened to terminate her contract, and 3) sent a written denial of

leave home with her daughter. Am. Compl. ¶¶ 32, 34, 45.  Plaintiff further claims that these

actions were taken with specific intent to inflict emotional distress. Am. Compl. ¶ 69.

Assuming, as the Court must, the truth of plaintiff's allegations, the conduct plaintiff describes is

not "so intolerable or outrageous such that it 'offends against the generally accepted standards of

decency and morality.'" Ogunde, 645 S.E. 2d at 526-27 (internal quotations omitted).  That her

co-workers or even supervisors may have made disparaging remarks about her competence,

while regrettable if true, is the type of behavior that likely occurs at some point in most

workplaces.  Without more information as to the context within which this behavior occurred,

the Court cannot deem it to have risen to the level of outrageousness that the Virginia courts

have found intolerable and therefore compensable.  See Ogune, 645 S.E. 2d at 526-27 (holding

that plaintiff, a prison inmate, failed to plead a cause of action for IIEP where plaintiff merely

concluded, without providing additional details, that the prison's medical services contractor's

refusal to treat him for a skin condition and refusal to exempt him from a prison grooming policy

upon their belief that the need to comply with the policy outweighed plaintiff's medical need and

their further belief that they lacked the authority to make such a determination was both

intentional and reckless); Clagett v. Allstate Insurance Co., No. CL06-CV-216-1, 2006 WL

2022182, at *2 (Va. Cir. Ct. June 5, 2006) (holding that plaintiff's claim that he suffered IIED when Allstate employees called him a liar, delayed the processing of his claim, and generally harassed him was insufficient because the conduct complained of was at most "a case of insensitivity, bad conduct or bad manners"); Rheet v. Varden, No. LS-CV-670-1, 2004 WL 1386313, at *11 (Va. Cir. Ct. June 18, 2004) (holding that plaintiff's claim that he suffered IIED when his upstairs neighbor dropped cigarettes from her deck down to his and caused him to be arrested and prosecuted for noise ordinance violations was insufficient in that the conduct simply could not be regarded as "atrocious and utterly intolerable in a civilized society.").

2.    Negligent Infliction of Emotional Distress ("NIED")

In Hughes v. Moore, 197 S.E. 2d 214 (Va. 1973), the Virginia Supreme Court clarified its understanding of the requirements a plaintiff must satisfy in order to successfully plead a cause of action for NIED, holding that "where the claim is for emotional disturbance and physical injury resulting therefrom, there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence." Id. at 219.  The court further emphasized the importance of plaintiff's establishing a causal connection between the various elements: "[T]here may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury." Id.

In her complaint, plaintiff makes no mention whatsoever of any fright or shock resulting from the conduct of the ISA employees.  As to this count, defendants' motion to dismiss will therefore be granted.  See Clagett, 2006 WL 2022182, at *2 (holding that where plaintiff sought

to recover for NIED on the grounds that he was called a liar, that the processing of his claim was delayed, and that he was harassed, because there was "no physical injury tied to a frightful or shocking event, only rude, insensitive conduct," plaintiff's claim was insufficient); <u>Delk v. Columbia/HCA Healthcare Corp.</u>, 523 S.E. 2d 826, 834 (Va. 2000) (holding that plaintiff's allegation that she suffered "severe mental, emotional and physical trauma" was insufficient to support a claim for NIED in that she failed to provide any description whatsoever of her physical injury).

          3.      <u>Slander</u>

"Under Virginia law, the necessary elements of the tort of defamation are (1) publication about the plaintiff, (2) an actionable statement, and (3) the requisite intent." <u>Steinla v. Jackson</u>, No. 96-CV-285, 1997 WL 1070597, at *3 (Va. Cir. Ct. May 20, 1997).  To be actionable, the statement must be both false and defamatory. <u>Id.</u>  However, defamatory statements "which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment," thereby damaging "such person in his or her profession or trade," are considered actionable per se. <u>Id.</u> at *6 (quoting <u>Perk v. Vector Res. Group, Ltd.</u>,485 S.E. 2d 140, 144 (Va. 1997)).

The fatal flaw in plaintiff's slander claim is that she fails to identify the allegedly defamatory words.  As noted by the court in <u>The Federal Land Bank of Baltimore v. Birchfield</u>, 3 S.E. 2d 405 (Va. 1939), "[g]ood pleading requires that the exact words spoken or written must be set out in the declaration <i>in haec verba</i>." <u>Id.</u> at 410.  <u>Accord</u> <u>Asser v. Commonwealth of Virginia</u>, No. LT-817-1, 2005 WL 2548224, at *4 (Va. Cir. Ct. Aug. 25, 2005) ("settled law that a defamation claim must set forth the exact words used that are alleged to be defamatory").  In

her complaint, plaintiff merely states, without any detail, that "[s]landerous statements have been spread not only within the school walls but beyond in the larger community, a community in which Plaintiff lives, and one in which she should be able to find work more easily, but for the slanderous communication of Defendant ISA's agents and/or employees." Am. Compl. ¶ 72. Without any information whatsoever about the actual words that were allegedly used, neither the Court nor defendants can assess whether plaintiff has stated a plausible claim for relief sufficient to support an inference of liability.

**CONCLUSION**

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE