UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SONIA GHAWANMEH,

    Plaintiff,

    v.                                                                   Civil Action No. 09-631 (JMF)

ISLAMIC SAUDI ACADEMY and
THE KINGDOM OF SAUDI ARABIA,

    Defendants.

## MEMORANDUM OPINION

This case was referred for all purposes including trial. Currently pending and ready for resolution is plaintiff's Motion for Leave to File Amended Complaint ("Plains. Mot.") [#20]. For the reasons stated below, plaintiff's motion will be granted.

## INTRODUCTION

Plaintiff, Sonia Ghawanmeh, is a naturalized American citizen originally from Jordan. Amended Complaint ("Am. Compl.") ¶ 15. Defendants are the Islamic Saudi Academy ("ISA"), where plaintiff worked as a teacher from 2000 to 2009, and the Kingdom of Saudi Arabia. Am. Compl. ¶¶ 10, 11, 18, 39. On November 27, 2009, this court granted in part and denied in part defendants' motion to dismiss. See Memorandum Opinion (11/27/09) ("Mem. Op.") [#18]. Following that decision, plaintiff's only remaining viable claims were that 1) defendants violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*,[1] when they discriminated against her based on her national origin, and that 2) defendants breached her

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

employment contract when they fired her without cause. Plaintiff now seeks leave to file a second amended complaint in order to assert revised claims that 1) defendants violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, when they denied various leave requests, and that 2) defendants subjected her to slander as a result of the spread of disparaging remarks beyond the school community.

## ANALYSIS

I.  Legal Standard

Plaintiff seeks to amend her complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure ("Rule 15"), which provides that before trial, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule further notes that "[t]he court should freely give leave when justice so requires." Id. As interpreted by the Supreme Court, to be "freely given" means that "[i]f the underlying facts or circumstances relied upon by the plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). The Court further noted:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'

Id. Accord Gray v. D.C. Public Sch., ─ F. Supp. 2d. ─ , 2010 WL 668266, at *4 (D.D.C. Feb. 25, 2010).

II.  Discussion

Defendants argue that they have "suffered significant prejudice as a result of Plaintiff's repeated failures to adequately plead her claims and will be further prejudiced if Plaintiff is permitted leave to amend yet again." Islamic Saudi Academy's Memorandum in Opposition to Motion for Leave to File Amended Complaint ("Defs. Opp.") at 2. Specifically, defendants claim 1) that plaintiff has repeatedly failed to cure the deficiencies in her original complaint, 2) that defendants have incurred unnecessary expenses a) in the filing of their previous motions to dismiss and answer to the complaint, b) by having to again respond to claims that the court has already dismissed, and c) due to plaintiff's failure to comply with Rule 7(m) of the Local Rules prior to filing the current motion, and 3) that plaintiff's proposed amendment to her slander claim would be futile. Id. at 2-5.

A. Repeated Failures to Cure Deficiencies

Plaintiff filed her original complaint on April 6, 2009. See Complaint [#1]. On June 29, 2009, plaintiff filed an amended complaint. See Amended Complaint [#8]. On November 27, 2009, the court granted in part and denied in part defendants' motion to dismiss that had been filed on August 7, 2009. See Memorandum Opinion [#18]. That opinion dismissed plaintiff's FMLA, gender discrimination, and slander claims but otherwise denied defendant's motion. Less than one month later, on December 18, 2009, plaintiff filed the instant motion, abandoning her gender discrimination claim and seeking leave to file an amended complaint that she believed would cure the deficiencies that this Court had found in her first complaint. See Plains. Mot. This is the normal and anticipated practice under Rule 15 of the Federal Rules of Civil Procedure. Thus, in light of the fact that plaintiff moved to amend less than one month after the court ruled on defendants' motion to dismiss, asserting therein her unquestionable right to file an

3

amended complaint that met the Court's objections, and in light of Rule 15's mandate that leave to amend be freely granted, plaintiff's motion will not be denied on the grounds that she "repeatedly" failed to cure previous deficiencies or that she is abusing her right to amend her complaint. See Manning v. Brown & Williamson Tobacco Corp., 176 F.3d 479, 479 (5th Cir. 1999) (affirming trial court's dismissal of plaintiff's complaint on the grounds that plaintiff had *seven* months to file an amendment yet failed to do so even though he did file a response to the motion to dismiss); Payne for Hicks v. Churchich, 161 F.3d 1030, 1037 (7th Cir. 1998) (affirming district court's denial of plaintiff's motion to file a *tenth* amended complaint in part because plaintiff repeatedly failed to cure deficiencies in previous amendments); Mittleman v. United States, 997 F. Supp. 1, 10 (D.D.C. 1998) (denying plaintiff's motion to file an amended complaint in part because the motion was made *ten years* after the filing of the original complaint).

    B.    Unnecessary Expenses

Defendants claim that they have incurred the unnecessary expense of having to file their two previous motions to dismiss and their answer to the first amended complaint. Defs. Opp. at 3. As noted above, plaintiff filed her original complaint on April 6, 2009, and she filed her amended complaint on June 29, 2009. On June 19, 2009, prior to the filing of the amended complaint, defendants filed a motion to dismiss. See Islamic Saudi Academy's Rule 12(b)(1) Motion to Dismiss [#3]. On August 7, 2009, following the filing of plaintiff's amended complaint, defendants filed another motion to dismiss. See Islamic Saudi Academy's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) [#10]. Although defendants filed two motions to dismiss, one prior to the filing of plaintiff's first amended complaint and one after, there was

4

nothing untoward or improper about plaintiff's actions. Under Rule 15,[2] plaintiff was permitted to file an amended complaint, despite the filing of defendants' motion to dismiss because defendants had not yet filed their answer. In other words, when plaintiff filed her first amended complaint, she was free to do so at any time as long as it was before defendants filed their answer. In this case, defendants did not file their answer until December 21, 2009, albeit following two uncontested motions for extensions of time. Therefore, any costs defendants incurred in the filing of their two motions to dismiss were of their own making.

Defendants also contend that they will incur the unfair burden of having to respond to claims that this court has already dismissed. Defs. Opp. at 3. While those claims were dismissed, they were, by operation of law, dismissed without prejudice to plaintiff's legitimate attempt to cure the deficiencies the Court had identified. While it is true that defendants will have to bear the burden of answering an amended complaint and perhaps filing another dispositive motion, amendments would not be allowed under any circumstances were that not anticipated by Rule 15.

Finally, defendants claim that had plaintiff complied with Rule 7(m) of the Local Rules of Civil Procedure, which obliges the parties to confer with each other prior to the filing of a nondispositive motion, defendants would have had an opportunity to mitigate the costs associated with the filing of their answer to the complaint. Defs. Opp. at 3-4. While plaintiff did fail to comply with the obligation imposed by Local Rule 7(m) prior to filing its current motion, and defendants press the claim that, had they been advised of plaintiff's intentions, they would

---

[2] Rule 15 was amended on December 1, 2009. Under the new rule, a plaintiff may file an amended complaint within twenty-one days of a defendant's filing an answer or a motion to dismiss. See Fed. R. Civ. P. 15(a)(1)(B).

not have spent time preparing an answer to the complaint, I find that point has merit. I will therefore order plaintiff to show cause why she should not have to pay the expenses that defendants incurred in preparing that allegedly useless answer.

Finally, were the court to deny plaintiff's motion to amend, plaintiff would simply refile the motion and defendants would be obliged to refile their opposition. "The purpose of Rule 7(m) is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to create an opportunity for the parties to narrow the disputed issues that must be brought to the court." Smith v. Café Asia, 598 F. Supp. 2d 45 (D.D.C. 2009) (citing Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 102 (D.D.C. 2006)). Clearly, defendants would still oppose plaintiff's motion to file a second amended complaint. Furthermore, although defendants claim that plaintiff knew well in advance that she would be filing the current motion, this is pure speculation on defendants' part. In any event, plaintiff's failure to comply with Local Rule 7(m) and the resulting expense to defendants does not in itself warrant denying plaintiff's motion.

      C.      <u>Futility of Plaintiff's Proposed Amendment</u>

Defendants' last argument is that plaintiff's proposed amendment to her slander claim would be futile in that it fails to adequately address the deficiencies identified by the court in its previous ruling. Defs. Opp. at 4. Citing Virginia law, defendants state the following:

> The alleged statements do not constitute actionable slander for two reasons. First, they are quintessential expressions of opinion and are not statements of fact that could be proven false . . . Second, the allegations describe no more than statements by a supervisor concerning an employee's performance or ability that were made within the Academy and not to third persons such as potential employers.

<u>Id.</u>

Any attempted amendment must not be futile. James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (internal citations omitted). In other words, it must be able to survive a motion to dismiss. Id. That determination is a question of law to be determined by the court. Jordan v. Kollman, 612 S.E.2d 203, 206-07 (Va. 2005) (internal citation omitted); Yeagle v. Collegiate Times, 497 S.E.2d 136, 137 (Va. 1998).

In this court's initial opinion, wherein the court first ruled on plaintiff's claim of slander, the court indicated that under Virginia law, the allegedly slanderous words had to be identified "*in haec verba*." Memorandum Opinion (11/27/09) [#18] at 25 (quoting The Fed. Land Bank of Baltimore v. Birchfield, 3 S.E.2d 405, 410 (Va. 1939)). Because plaintiff's first amended complaint failed to identify the slanderous words that were spoken, the court granted defendants' motion to dismiss as to this claim.

In her proposed second amended complaint, attached to her motion for leave to file, plaintiff now claims the following:

> Certain agents and/or employees of Defendant ISA have persisted in a course of conduct designed to denigrate, humiliate, and tarnish Plaintiff's reputation as a competent teacher. Slanderous statements have been spread not only within the school walls but beyond in the larger community, a community in which Plaintiff lives, and one in which she should be able to find work more easily, but for the slanderous communication of Defendant ISA's agents and/or employees. At one meeting in November of 2008, shortly before the Plaintiff's exercise of FMLA leave, Dr. Ibrahim Sakaji, a senior school official, denigrated Plaintiff's reputation in front of other schoolteachers and staff members, wherein the Plaintiff herself was not present, saying that she was 'not a good teacher,' and that she 'did not like teaching,' and using words and innuendo that tend to cast Plaintiff's competence as a teacher in a negative light.

Plains. Mot., Attachment 1 (Second Amended Complaint) ¶¶ 73-75.

In Virginia, the law of defamation is divided into two categories: 1) *per se* defamation, and 2) defamation requiring proof of special damages. M. Rosenberg & Sons v. Craft, 29 S.E.2d 375, 378 (1944). At common law, *per se* defamatory words are:

> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade.

Carwile v. Richmond Newspapers, Inc., 82 S.E.2d 588, 591 (Va. 1954).

Generally speaking, these words are to be given their "plain and natural meaning." Id. at 591-92. However, it is not necessary that the defamatory charge be in direct terms . . . [it] may be made by inference, implication or insinuation." Id. (internal citations omitted). On the other hand, not all statements are actionable. "[S]peech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action." Fuste v. Riverside Healthcare Ass'n Inc., 575 S.E.2d 858, 861 (Va. 2003) (citations and internal quotations omitted). In other words, "[s]tatements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion," not defamatory statements. Id. Finally, to be *per se* actionable, "the words must contain an imputation that is 'necessarily hurtful' in its effect upon plaintiff's business and must affect him in his particular trade or occupation." Fleming v. Moore, 275 S.E.2d at 636 (internal quotation omitted). In other words, "[t]here must be a nexus between the content of the defamatory statement and the skills or character required to carry out

8

the particular occupation of the plaintiff." Id. (citing Restatement (Second) of Torts § 573, Comment 3 (1976)).

Plaintiff has now, in her proposed second amended complaint, identified the slanderous words at issue.[3] Specifically, plaintiff claims that a senior school official told other members of the school's staff that plaintiff was "not a good teacher" and "did not like teaching." The issue, therefore, is whether her claim would survive a motion to dismiss. At this stage of the proceedings, viewing all reasonable inferences in plaintiff's favor,[4] the answer is yes.

While the statement that plaintiff "did not like teaching" comes close to the thin and wavering line that Virginia law draws between a statement of fact and opinion,[5] the statement that she is not a good teacher is a declaratory, verifiable statement of fact that demeans her ability to do her job and is actionable under Virginia law. See Carwile, 82 S.E.2d at 592 ("[W]ords and statements which charge an attorney with unethical or unprofessional conduct and

---

[3] Plaintiff claims that the proposed Second Amended Complaint provides a detailed allegation of the slanderous statements *and* that the "actual defamatory words used will be detailed in the bill of particulars." Plains. Mot. at 6. Under Virginia law, the court may order the filing of a bill of particulars or the defendant (in both civil and criminal cases) may move for such a filing. See Swisher v. Commonwealth, 256 Va. 471, 480 (1998) ("The purpose of a bill of particulars is to state sufficient facts regarding the crime to inform an accused in advance of the offense for which he is to be tried.") (quoting Hevener v. Commonwealth, 189 Va. 802, 814 (1949)); Dodge v. Trustees of Randolph-Macon Woman's College, 276 Va. 1, 4 (2008) (defendant in a civil action filed a motion for a bill of particulars). In this case, even though a bill of particulars has neither been sought nor filed, the court nevertheless finds that allegations of slander contained within plaintiff's proposed Second Amended Complaint are sufficient to survive a motion to dismiss.

[4] See In re Interbank Funding Corp. Securities Litigation, 668 F. Supp. 2d 44, 47 (D.D.C. 2009) ("In reviewing whether a proposed pleading can survive a motion to dismiss, 'the allegations of the complaint should be construed favorably to the pleader.'") (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

[5] John B. O'Keefe, Occupational Reputation, Opinion, and the Law of Defamation in Virginia, 5 APPALJL 35, 35-66 (2006).

which tend to injure or disgrace him in his profession are actionable per se"); Lamb v. Weiss, No. 03-CV-7, 2003 WL 23162338, at *4 (Va. 2003) ("[S]ince the term 'abandon' has a particular connotation in the context of a doctor's professional responsibility to a patient . . . the statement that [plaintiffs] 'abandoned' their patients is demonstrably true or false."). See also Eslami v. Global One Commc'ns, Inc., No. 174096, 1999 WL 51864, at *5 (Va. Cir. 1999) (statements that plaintiff "lost his temper" and that plaintiff "just did not fit in" were actionable because they "appear[ed] to be factual statements which in their ordinary meaning convey[ed] information that may have impugned [plaintiff's] reputation as a business professional.").

Plaintiff, however, faces a second hurdle. Statements made by "an employer to his employees of the reason for the discharge of a fellow employee of the reason for the discharge of a fellow employee" are privileged. Kroger Co. v. Young, 172 S.E.2d 720, 722 (Va. 1970). See Larimore v. Blaylock, 528 S.E. 2d 119, 121 (Va. 2002) ("We have applied the doctrine of qualified privilege in a number of cases involving defamatory statements made between co-employees and employers in the course of employee disciplinary or discharge matters."). Plaintiff defeats the privilege only by establishing malice. Kroger, 172 S.E. 2d at 723. Virginia law defines malice as "behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communications was made." Union of Needletrades v. Jones, 603 S.E.2d 920, 925 (Va. 2004) (quoting The Gazette, Inc. v. Harris, 325 S.E.2d 713, 727 (Va. 1985)). Plaintiff's statement that "[c]ertain agents and/or employees of Defendant ISA have persisted in a course of conduct designed to denigrate, humiliate, and tarnish Plaintiff's reputation as a competent teacher" and her legitimate inference that Dr. Sakaji's statement that

she was not a good teacher was a part of that course of conduct, read indulgently, is a sufficient allegation of malice.

## CONCLUSION

Plaintiff's motion will therefore be granted. An Order accompanies this Memorandum Opinion.

                                                                                             _____
                                                      JOHN M. FACCIOLA
                                                      UNITED STATES MAGISTRATE JUDGE